1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

Mar 31, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: ____PMC____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STAR FABRICS, INC.,

  Plaintiff,

  v.

MILLENIUM CLOTHING, INC. et al.

  Defendants.

CASE NO. 2:14-CV-00826-SVW-SS

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR COSTS
AND FEES
[125]

## I.    INTRODUCTION

On December 10, 2014, a jury found that defendant Millenium Clothing, Inc. ("Millenium") infringed on plaintiff Star Fabrics, Inc.'s ("Star") copyright. (Dkt. 118.) The jury found that Millenium was not a willful infringer and awarded Star $30,000 in statutory damages. (*Id.*)

Presently before the Court is Star's motion for costs, including attorneys' fees. (Dkt. 125.) Plaintiff seeks $111,612.50 in fees, $4,757.08 in costs, and post-judgment interest. As discussed below, the Court GRANTS IN PART Star's motion for costs and fees.

## II.    PROCEDURAL HISTORY

Star filed the instant lawsuit on February 3, 2014. (Dkt. 1.) Plaintiff filed its complaint against five defendants (including Millenium), asserting claims for direct and secondary

1   copyright infringement.  (Dkt. 1.)  On March 28, 2014, this Court ordered Star to show cause

2   why the action should not be dismissed for lack of prosecution.  (Dkt. 18.)  At that point in the

3   case, one defendant had answered the complaint, (Dkt. 14), and Star had stipulated with two

4   other defendants to extend their time to respond, (Dkts. 12–13).  Millenium had not yet

5   responded to the complaint or stipulated with Plaintiff for an extension.  Plaintiff responded to

6   the Court's Order to show cause by requesting that the clerk enter default against Millenium and

7   another defendant.  (Dkts. 19–20.)  On April 1, 2014, the clerk entered default against

8   Millenium.  (Dkt. 22.)

9       On May 1, 2014, Star applied for entry of default judgment against Millenium.  (Dkt. 35.)

10  In its application for entry of default judgment, Star argued that Millenium's failure to cooperate

11  was inexcusable, prejudiced Star, and prevented Star from ascertaining its actual damages.  (Dkt.

12  35: Appl. 4, 7–9.)  In its application, Star sought $30,000 in statutory damages, costs, and "at

13  least $812" in reasonable attorney fees.  (*Id.* at 11–12.)  Star also sought entry of default

14  judgment against defendant Conway Stores, Inc. ("Conway").  (Dkt. 30.)  In its application Star

15  sought at least $1,350 in fees for approximately 3.5 hours spent pursuing Star's claim against

16  Conway.  (Dkt. 30; Doniger Decl. re Conway Application ¶ 5.)

17      On June 5, 2014, this Court granted Star Fabric's application for entry of default

18  judgment against Millenium and Conway.  (Dkt. 43.)  The Court awarded Star Fabric $30,000 in

19  statutory damages and $2,400 in attorneys' fees.  (Dkt. 43.)  This corresponds to the amount

20  authorized by the schedule set forth in Local Rule 55-3.  While a plaintiff may request in writing

21  a higher award of fees, the Court noted that Star had not done so.  (*Id.* at 9.)

22      On June 27, 2014, Millenium moved to vacate the default and any judgment entered

23  thereon.  (Dkt. 45.)  Millenium argued that, contrary to Star's assertion in its motion for default

24  judgment, it had not simply failed to appear; instead, Millenium asserted that between March 4

25  and June 6, 2014, it had communicated with Plaintiff's counsel regarding the possibility of

26  settlement.  (Dkt. 45: Mem. 6–7.)  Millenium also asserted that during this time period it

27  provided Star with, *inter alia*, invoices reflecting sales of the garments at issue.  (*Id.* at 6.)  In its

28  Opposition to Millenium's motion, Star requested that this Court condition any set aside of the

1    default on Millenium's payment to Star of $6,221 in attorney fees.

2          On July 28, 2014, this Court granted Millenium's application to set aside the default

3    judgment.  (Dkt. 48.)  In its Order, the Court described the disconnect between Star's

4    representations in its application for entry of default judgment and the reality of the ongoing

5    talks with Millenium.  The Court described Star's representations as "half-truths, at best." (Dkt.

6    48: Order 3.)  The Court also noted that "[a]ll of this could easily have been avoided if plaintiff

7    had simply informed the Court, either in response to the OSC or in response to the order of April

8    4, 2014, that it was engaged in discussions with Millenium and requested a reasonable extension

9    of time."  (*Id.* at 5.)  The Court therefore granted Millenium's motion to set aside the default

10   judgment and declined to award Star $6,221 in fees and costs.  (*Id.*)

11         On November 3, 2014 Millenium filed an *ex parte* application to compel Star to produce

12   assorted documents and to make certain witnesses available for depositions.  (Dkt. 69.)  In its

13   Opposition to Millenium's *ex parte* application (filed on November 4, 2014), Star again asked

14   the Court to award it fees as a sanction against Millenium.  (Dkt. 72: Opp. 6–7.)  Star asserted

15   that its counsel, Stephen Doniger ("Doniger"), had spent one hour on the application and

16   anticipated spending an additional two hours related to it.  (*Id.*; Doniger Decl. in Support of Pl.'s

17   Opp. to *Ex Parte* ¶ 4.)  Star also asserted that its attorney Howard Han ("Han") spent five hours

18   related to the application.  (Dkt. 72: Opp. 6–7; Doniger Decl. in Support of Pl.'s Opp. to *Ex*

19   *Parte* ¶ 4.)  Based on hourly rates of $525 for Doniger and $320 for Han, Star sought $3,175 in

20   fees.  (Dkt. 72: Opp. 6–7; Doniger Decl. in Support of Pl.'s Opp. to *Ex Parte* ¶ 4.)  The Court did

21   not award fees to Star.

22   **III.    DISCUSSION**

23         **A.    An Award of Attorneys' Fees Is Proper**

24         The prevailing party in a copyright infringement action may recover reasonable

25   attorneys' fees.  17 U.S.C. § 505.  A court has broad equitable discretion in fee award

26   determinations. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).  "The essential goal in

27   shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Fox v.*

28   *Vice*, 131 S. Ct. 2205, 2216 (2011).  "'[E]xceptional circumstances' are not a prerequisite to an

award of attorneys fees; district courts may freely award fees, as long as they treat prevailing plaintiffs and prevailing defendants alike." *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996).

"[T]he policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Fogerty*, 510 U.S. at 526. Accordingly, the factors discussed below are merely guidelines, and should only be applied "so long as they are consistent with the purposes of the Copyright Act." *Fogerty v. Fantasy, Inc.*, 94 F.3d 553, 560 (9th Cir. 1996). Not every factor need weigh in favor of the prevailing party to merit an award. *Cabral*, 80 F.3d at 378. However, "willful infringement is an important factor favoring an award of fees." *Id.* at 379.

### 1.    Degree of Success

First, a court may consider the prevailing party's degree of success. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In this case, Plaintiff was undeniably the prevailing party and achieved a high degree of success. Nevertheless, Star's victory was incomplete. Star proceeded to trial on one copyright infringement claim. It sought a jury determination that Millenium was a willful infringer and an award of $150,000 in fees. The jury declined to find that Millenium infringed willfully. However, the jury did award Star $30,000—the maximum amount allowable for non-willful infringement and a significant sum. Moreover, the jury also declined to find that Millenium was an innocent infringer for whom the statutory damages minimum was reduced. On balance, this factor weighs slightly in favor of awarding fees. *See Glass v. Sue*, No. CV 09-8570-RGK SHX, 2011 WL 561028, at *3 (C.D. Cal. Feb. 8, 2011) (finding degree of success factor slightly favored awarding attorney fees where the summary judgment was granted to the defendant on two claims and a jury found for the plaintiff on her willful infringement claim).

### 2.    Motivations

Second, a court may consider the parties' motivations—such as whether the defendant infringed the plaintiff's copyright in good faith, or whether the plaintiff brought the suit with malicious intentions. *Fogerty*, 510 U.S. at 534 n.19; *see also Don Post Studios, Inc. v. Cinema*

*Secrets, Inc.*, 148 F. Supp. 2d 572, 574 (E.D. Pa. 2001) (holding prevailing defendant entitled to attorneys' fees when plaintiff's suit was "brought for an improper purpose"). Star's suit was brought to protect its copyright, "one of the objectives of the Copyright Act," and there is no indication that the suit was brought maliciously. *Streeter*, 438 F. Supp. 2d at 1074.

Additionally, Star attempted to settle this case. Millenium complains that Star engaged in bad faith settlement negotiation tactics. However, Millenium should heed the age-old warning that those who live in glass houses should not throw stones. Millenium admits that between June 3 and June 6, 2014, Star reduced its settlement demand from $18,000 to $4,500. (Schalcter Decl. ¶ 14; Schlacter Decl., Ex. 2.) During the same time period, Millenium increased its offer by less than $2,000—from $1,750 to $3,500. (Schalcter Decl. ¶ 14; Donniger Decl., Ex.1.) Moreover, the parties were within $1,000 of settling the case and Millenium still did not increase its offer further. Admittedly, this was the time period during which Star's bad faith motion for default judgment against Millenium was pending. Nevertheless, this tense circumstance does not excuse Millenium's stubbornness. Millenium's improper conduct in settlement negotiations outweighs the significance of the jury's finding that it did not infringe willfully; it suggests that Millenium took this case to trial with an improper motive.

Finally, Star's dramatic raise in its settlement demand after the Court vacated the default judgment does not evidence an improper motive—such as intending to "force a settlement with a wealthy [defendant] with little or no basis for doing so." *Lewis v. Activision Blizzard, Inc.*, No. C 12-1096 CW, 2014 WL 4953770, at *3 (N.D. Cal. Sept. 25, 2014) (alteration in original) (quoting *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002)).

On balance, this factor favors awarding fees. *See Streeter*, 438 F. Supp. 2d at 1074–75.

### 3.     Objective Unreasonableness

Third, a court may consider the objective unreasonableness of the factual and legal components of the losing party's claim. *Fogerty*, 510 U.S. at 534 n.19. Courts afford significant weight to this factor. *See, e.g.*, *Matthew Bender & Co v. West Publishing Co.*, 240 F.3d 116, 122 (2d Cir. 2001).

As discussed above, Millenium's conduct during settlement negotiations was improper

and objectively unreasonable.  However, Star's conduct during this litigation was also far than laudable.

While Star's factual and legal arguments at trial were reasonable, its conduct surrounding the motion for default judgment and subsequent motion to vacate the default judgment were not. As the Court found in its July 28 Order, while settlement talks with Millenium were ongoing, Star filed a motion for default judgment based on half-truths regarding Millenium's failure to cooperate in the litigation.  In addition to the foregoing, several discovery disputes indicate that neither party was as forthcoming or cooperative as it could have been.

In light of Star's unreasonable and dishonest application for default judgment, this factor weighs against awarding fees.  However, given Millenium's own unreasonable conduct, this factor's weight is slight.

### 4. Compensation and Deterrence

Fourth, a court may weigh considerations of compensation and deterrence.  *Fogerty*, 510 U.S. at 534 n.19.  Compensation and deterrence would support an award of attorneys' fees in this case.  An award would deter future violations and encourage meritorious suits under the Act. *See Streeter*, 438 F. Supp. 2d at 1075 ("An award of attorneys' fees would promote the protection of copyrights and further the goal of deterrence, by encouraging infringement actions for such violations.").

### 5. Frivolousness

Finally, a court may consider the frivolousness of the legal claims in the case.  *Fogerty*, 510 U.S. at 534 n.19.  A claim is frivolous when it is based upon an "inarguable legal conclusion" and/or "fanciful factual allegation[s]."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Streeter*, 438 F. Supp. 2d at 1074; *Batjac Productions, Inc. v. Goodtimes Home Video Corp.*, 44 U.S.P.Q.2d 1788, 1790 (C.D. Cal. 1997).  For example, when a plaintiff files a copyright infringement action and has "no claim of ownership whatsoever," the lawsuit is objectively unreasonable.  *Batjac*, 44 U.S.P.Q.2d at 1790.  As Millenium concedes and the jury's verdict indicates, Star's claim was not frivolous.  *See Streeter*, 438 F. Supp. 2d at 1074 (holding claims were not frivolous when they supported a default judgment).  This factor thus favors

awarding fees.

### 6.    Conclusion

Four out of five factors weigh in favor of an award of fees.  The Court therefore concludes that Star is entitled to an award of attorneys' fees under 17 U.S.C. § 505.  *See  Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*, No. CV057686AHMFMOX, 2007 WL 4898365, at *5 (E.D. Cal. Dec. 20, 2007) *aff'd,* 345 F. App'x 244 (9th Cir. 2009) (awarding fees where four out of five factors favored an award).

### B.    Plaintiff's Fee Request is Reasonable

"[W]hether or not [the client] agreed to pay a fee and in what amount is not decisive. . . . The criterion for the court is not what the parties agreed but what is reasonable." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)).  A reasonable hourly rate is determined by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Supreme Court has adopted what is known as the "lodestar method," an initial fee calculation constituting a reasonable number of hours expended on the case multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The burden rests on the party seeking the award. *Id.* at 437.  This party "should submit evidence supporting the hours worked and rates claimed." *Id.* at 433.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.  However, "[a] request for attorney's fees should not result in a second major litigation." *Id.* at 437.  Additionally, the Court has discretion to impose up to a 10 percent reduction without explanation. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir.) *cert. denied sub nom. City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014).

Plaintiff seeks the following fees specifically.  For lead attorney Doniger, Star seeks a total of 157.9 hours at hourly rates of $510–$535, for a total of $80,796.50.  For associate attorney Han, Star seeks 77.7 hours at an hourly rate of $325, for a total of $25,252.50.  For associate attorney Annie Aboulian ("Aboulian"), Star seeks 14.4 hours at an hourly rate of $325,

for a total of $4,680.  For paralegal Grace Garcia ("Garcia"), Star seeks 9.3 hours at an hourly rate of $95, for a total of $883.50.  In total, Star seeks $111,612.50 in fees.

### 1.    Reasonable Number of Hours

While courts generally accept what is stated in the request for fees, courts at times reduce the hours when they are clearly excessive or only vaguely described.  *See, e.g., In re Wash. Public Power Supply Sys. Securities Litigation*, 19 F.3d 1291, 1298 (9th Cir. 1994).  Here, Doniger claims to have worked to have worked 157.9 hours, Han claims to have worked 77.7 hours, Aboulian claims to have worked 14.4 hours, and Garcia claims to have worked 9.3 hours. These totals do not appear unreasonable on their face given the complexity of the case, investigative work conducted, and the time spent preparing for and proceeded with trial through a jury verdict.  In addition to the question of infringement, this case raised both factual and legal issues regarding the validity of Plaintiff's copyright registration and the propriety of submitting this question to the jury.  However, not all of Plaintiff's requested fees are properly sought.

### a.    Hours Related to Other Defendants or Administrative Tasks

Star originally filed this case against four defendants in addition to Millenium.  Doniger asserts that he personally sorted through both his and Aboulian's hours to exclude billing entries for time spent solely on non-Millenium related claims.  (Doniger Decl. ¶ 7.)  Neither Han nor Garcia claims to have sorted through their own billing entries.  The Court finds that Garcia's entries on May 1, 2014 relating to the notice of dismissal regarding TJX companies and Star of India and on July 16, 2014 relating to discovery regarding Earthbound Trading do not relate to claims against Millenium.  The Court also finds that Garcia's November 14, 2014 entry for drafting and filing two notices of change of attorney business contact information is part of general firm overhead and thus not chargeable to Millenium.  The Court therefore finds these fees unreasonable and accordingly DENIES Star's claim for these entries totaling .9 hours.

### b.    Aboulian's Hours

Star bears the burden of proving its entitlement to fees for Aboulian's hours.  In support of its claim for Aboulian's hours, Star submits Doniger's declaration and a spreadsheet listing

8

Aboulian's time entries.  Doniger's declaration offers no facts establishing how he has personal knowledge of the accuracy of Aboulian's time entries beyond his conclusory assertion that he has personal knowledge of all facts he alleges.  Additionally, the only facts he alleges regarding Aboulian are that she was an associate attorney at his firm through the end of July 2014 and that she is no longer practicing law.  (Doniger Decl. ¶ 19.)  These allegations are neither sufficient to prove that she requests a reasonable number of hours nor that she requests a reasonable hourly rate.  The Court accordingly DENIES Star's claim for 14.4 hours of Aboulian's time.

### c.     Fees Surrounding the Motion for Default Judgment

As discussed above, the Court finds that Star applied for entry of default judgment against Millenium in bad faith.  Moreover, the fees that Star seeks in the current motion for the time period from the beginning of the case until Star's application for default judgment against Millenium was filed are significantly larger than those asserted in Star's prior application.  In its May 1, 2014 application for default judgment against Millenium, Star asserted that Doniger's

> firm has spent approximately 2.4 hours pursing [his] client's claims against Millenium, including .75 hours conferring the client regarding its claims against Millenium; .4 hours preparing for the service of process on Millenium and filing the proof of service with the Court; .5 hours requesting an entry of default against Millenium; and .8 hours preparing this motion for default motion [sic].

(Dkt. 35: Doniger Decl. ¶ 5.)  Star thus sought "at least $812" in fees.  In the current motion, Star asserts that Doniger's firm spent 15.9 hours between February 3, 2014 and May 1, 2014.  Star seeks a total of $6,247.30 in fees for this time period.  (Doniger Decl., Ex. SMD; Garcia Decl., Ex. GCG.)

Doniger attempts to explain this discrepancy by asserting that he "reduced his fees to the minimum number of entries associated with the [motion for default judgment] . . . and pertained only to those entries directly related and attendant to the [motion]**.**"  (Supp. Doniger Decl. ¶ 29.)  Doniger's argument is inapposite.  As is apparent from the portion quoted above, the application for default judgment did not limit itself to only those entries directly related to that motion.  Moreover, there is no logical reason why Star would have limited its fees in such a manner.  Even if Star's fees were greater than the amount authorized by the Local Rules, it could have

requested (and possibly received) a higher award.  Doniger's feeble attempt to explain away a discrepancy of over $5,400 smacks of dishonesty.

Given Star's bad faith and half-truths surrounding its application for default judgment against Millenium and the inexplicable discrepancies between its prior and current fee requests, the Court DECLINES to award Star fees for: (1) any hours worked during the time from the beginning of the case until Star filed its motion for default judgment against Millenium; and (2) any other fees related to Star's motion for default judgment or Millenium's subsequent motion to vacate the default judgment.  The Court finds these fees unreasonable.  Accordingly, the Court DENIES Star's request for 16.9 hours of Doniger's time and for 1.6 hours of Garcia's time, totaling $8,771 in fees.

### d.    Fees Regarding Millenium's *Ex Parte* Application to Compel

There is also a discrepancy between Star's fee request in its Opposition to Millenium's motion to compel and the fees currently sought with respect to that motion.  In its November 4, 2014 Opposition to Millenium's ex parte application to compel, Star asserted that as of the time of filing, Doniger had spent 1 hour and Han had spent 5 hours related to the application.  (Dkt. 72.)  Star also asserted that Doniger anticipated spending an additional 2 hours related to the application.  (*Id.*)  In contrast, Star now seeks fees for 11 hours worth of time entries related to the application and occurring up until the time that Star filed its Opposition.  (Doniger Decl., Ex. SMD; Han Decl., Ex. HSH.)  The 5 hour difference between the amount of time Star asserted in its Opposition and the amount of time Star now asserts that Doniger's firm spent related to the application until November 4 is inexcusable.  Given Star's bad faith conduct and the Court's inability to reconcile these numbers, the Court DENIES Star's request for 7.4 hours of Doniger's time and for 3.6 hours of Han's time, totaling $4,944 in fees.

### e.    Excessive Charges

The Court's inspection of the billing records reveals certain other unreasonable billings.  On October 9, 2014, Han billed 2.4 hours to draft jury instructions and a verdict form and to email opposing counsel about them.  (Han Decl., Ex. HSH.)  On October 14, 2014, Doniger

10

billed 2.3 hours to revise and send to Millenium the draft jury instructions.  (Doniger Decl., Ex. SMD.)  Doniger and his firm have ample experience litigating copyright cases.  As Star admits, Doniger's firm recycles work and research from prior similar cases when drafting documents.  The proposed jury instructions for this case were not so novel or different that much tailoring to the facts of this case was required.  The same is true of the verdict form.  There is no reason why a seasoned associate such as Han or an experienced copyright litigator such as Doniger would require a combined 4.7 hours to draft and send the jury instructions and verdict form submitted in this case.  The Court accordingly reduces Doniger's hours to 1.5 hours and Han's hours to 2 hours.

On November 21, 2014, Han billed 2.8 hours to draft an *ex parte* to compel Millenium to respond.  (Han Decl., Ex. HSH.)  On the same day, Doniger billed 1.3 hours to finalize it.  (Doniger Decl., Ex. SMD.)  This was a short, simple filing and a reasonable attorney would not have required a total of 4.1 hours to draft and complete.  The Court therefore reduces Han's hours to 1.5 hours and Doniger's hours to .7 hours for these entries.

In December 2014 Han billed 2.9 hours to draft the motions in limine while Doniger billed 2.8 hours to outline motions in limine and 2.1 hours to research and complete drafts of motions in limine.  (Han Decl., Ex. HSH; Doniger Decl., Ex. SMD.)  Star only filed two motions in limine—neither of which was particularly long.  Additionally, while one motion raised a somewhat complicated issue regarding the PRO-IP Act, Doniger had dealt with the same issue in a previous case.  (Schlacter Decl., Ex. 8.)  Accordingly, there is no reason why it should have taken Han 2.9 hours to draft the motions after Doniger had already outlined them or why Doniger should have required a total of 4.9 hours to outline, research, and complete drafts of them.  The Court therefore finds the requested hours unreasonable and reduces Han's hours to 1.5 hours and Doniger's hours to a total of 2 hours for these entries.

On December 3, 2014, Han billed 2.1 hours to review an ex parte to continue trial and to draft a timeline for an opposition brief.  (Han Decl., Ex. HSH.)  On the same day Doniger billed 3.6 hours to review the ex parte to continue trial and draft an opposition brief with the timeline.

(Doniger Decl., Ex. SMD.)  This was a simple ex parte application.  There is no reason why it required two attorneys to spend a combined 5.7 hours.  The Court accordingly reduces Han's hours to 1 hour and Doniger's hours to 1.5 hours.

Finally, Star asserts that Han spent 5.5 hours drafting and revising the current motion for fees and costs.  (Han Decl., Ex. HSH.)  It also asserts that Doniger spent 5.2 hours reviewing the motion plus 4.1 hours reviewing attorney billing entries to remove entries not related to Millenium.[1]  (Doniger Decl., Ex. SMD.)  Thus, Star asserts that its attorneys spent a total of 14.8 hours working on Star's filing for the current motion.  Plaintiffs are entitled to a reasonable award for such work.  *See Kinney v. Int'l Bros. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991).  However, the amount billed is excessive.  There is no reason why this work should have taken these two experienced lawyers so long—particularly given that all of Doniger's time was spent either reviewing Han's drafts or attorney bills.  The Court accordingly reduces Han's time to 3 hours and Doniger's time to 4.5 hours for these entries.

### f.      Duplicative Charges

The Court also finds that certain entries are duplicative and unnecessary.  On October 20, 2014, Doniger asserts that he spent .5 hours calling Schlacter to discuss discovery disputes and emailing to confirm.  On the same day he asserts that he spent .2 hours emailing Schlacter regarding discovery disputes.  (Doniger Decl., Ex. SMD.)  The Court finds the entry for .2 hours duplicative of the first entry and therefore DENIES the entry for .2 hours.

On December 5, 2014, Doniger billed 1.7 hours to review Millenium's trial documents and outline objections.  (Doniger Decl., Ex. SMD.)  Han also billed an hour on the same day for the same work.  (Han Decl., Ex. HSH.)  The Court finds this work duplicative and unreasoanble. In particular, the Court finds that there is no reason for Doniger, the more experienced attorney, to take longer than Han to complete the same task.  Accordingly, the Court reduces Doniger's hours to 1 hour and DENIES Han's fee request.

### 2.      Reasonable Hourly Rate

---

[1]  Doniger asserts that his hourly rate for this work was $535.

A reasonable hourly rate is determined by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Plaintiff requests $510 per hour for Doniger's time in 2014 and $535 per hour for his time in 2015. Star also seeks $325 per hour for Aboulian's and Han's time, and $95 per hour for Garcia's time.

Plaintiff's firm is reputable and active in litigating copyright cases in this district. (Doniger Decl. ¶¶ 10–11.) Doniger, the lead attorney in this case, graduated from the University of Southern California Law School in 1995 and has been practicing law for 19 years. (Doniger Decl. ¶ 9.) He has handled hundreds of copyright infringement cases and has litigated over 20 state and federal trials. (*Id.*) Doniger asserts that he has consulted with other attorneys and has reviewed fee applications submitted by other California firms, and that on this basis he believes that his and his firm members' rates are reasonable. (Doniger Decl. ¶ 16.)

Han graduated from New York University School of Law in 2005 and has worked at Doniger/Borroughs since 2014. (Han Decl. ¶¶ 2–3.) He asserts that he believes his requested hourly rate is reasonable in light of his experience and skill level and the skill level required to litigate copyright infringement cases.[2] (Han Decl. ¶ 5.)

Garcia has seven years of experience as a litigation paralegal and has worked at Doniger/Burroughs since 2012. She asserts that she believes her rates are reasonable in light of her experience and skill level and the skill level required to prepare and assist her supervising attorneys. (Garcia Decl. ¶ 5.)

The Court finds the requested hourly rates reasonable. *See DuckHole Inc. v. NBCUniversal Media LLC*, No. CV-12-10077-BRO, 2013 WL 5797204, at *5 (C.D. Cal. Oct. 25, 2013) (awarding fees in a copyright case and finding reasonable $580 per hour for senior attorney and $380 per hour for a third year associate); *Omega S.A. v. Costco Wholesale Corp.*, No. CV 04-05443 TJH RCX, 2012 WL 3150432, at *2 (C.D. Cal. June 20, 2012) *aff'd*, 776 F.3d 692 (9th Cir. 2015) (finding $100 per hour to be a reasonable rate for a paralegal in a copyright case).

---

[2]   As noted above, Plaintiff fails to submit any evidence regarding Aboulian's education or level of experience. Thus, in addition to failing to prove Aboulian's hours, Plaintiff also fails to prove that her rate is reasonable.

1          **3.      Conclusion Regarding Fees**

2          The Court finds the aforementioned inconsistencies between Star's previous fee requests

3    and the other evidence of Star's bad faith tactics disquieting. In light of these issues and the

4    foregoing discussion the Court further reduces Star's award by 10 percent.

5          In light of all of the reductions and denied claims discussed above, the Court finds that

6    Star is entitled to an award of reasonable attorney fees in the sum of $75,904.65.

7          **C.      Costs and Post-Judgment Interest**

8          Section 505 also allows the Court discretion to award full costs—including those

9    reasonable costs and expenses that "would normally be charges to a fee paying client."

10   *Duckhole*, 2013 WL 5797204, at *6 (quoting *Trustees of Const. Indus. & Laborers Health &*

11   *Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir.2006)). Star seeks $4,757.08 in

12   costs. Star offers a client billing statement detailing each expense to support its request. The

13   Court finds that Star is entitled to $4,757.08 in costs.

14         Star also seeks post-judgment interest pursuant to 28 U.S.C. § 1961. "Interest shall be

15   allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C.1961(a).

16   The Court therefore AWARDS post-judgment interest, which will be calculated from the date of

17   the entry of judgment "at a rate equal to the weekly average 1–year constant maturity Treasury

18   yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

19   week preceding the date of the judgment." *Id.*

20   **IV.   ORDER**

21         For the aforementioned reasons, the Court GRANTS Plaintiff's Motion with the

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

14

reductions and denials described.  The COURT AWARDS to Star $75,904.65 in reasonable attorney fees, $4,757.08 in costs, and post-judgment interest.

**IT IS SO ORDERED.**

**Dated:** March 31, 2015

_____
**STEPHEN V. WILSON**
**United States District Judge**